## M. ROHRHEIMER ET AL. v. CAROLINE WINTERS.

### ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued April 11, 1889—Decided May 6, 1889.
[To be reported.]

A contract, whereby one who is threatened with a criminal prosecution for fornication and bastardy, agrees to pay to the mother a stipulated sum for the maintenance of the child, is enforceable as a valid contract, even though it disclose on its face that it is executed to stifle such prosecution.

Before GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 252 January Term 1882, Sup. Ct.; court below, No. 208 September Term 1887, C. P. No. 1.

On October 10, 1887, Caroline Winters brought assumpsit against Moses Rohrheimer and Elias Loeb, executors of the will of Joseph Shloss, deceased, to recover the balance due upon a contract in writing dated April 1, 1880, between the plaintiff and said Joseph Shloss.

At the trial on October 25, 1888, before BREGY, J., the agreement upon which the suit was brought was put in evidence. It recited that Caroline Winters had lately been delivered of a bastard child, and had charged said Joseph Shloss with being the father thereof; that she had agreed with said Joseph Shloss to take the sum of $3,000 in full satisfaction for the lying-in expenses, maintenance, education and bringing up of said child, and had " remised, released, quit-claimed and forever discharged and by these presents doth remise, release, quit-claim and forever discharge the said Joseph Shloss, his heirs, executors and administrators, of and from all manner of criminal and civil actions, and from all debts, payments, accounts, claims and demands whatsoever," etc.; in consideration whereof said Joseph Shloss covenanted and agreed to pay to said Caroline Winters the sum of $3,000 at certain times designated, and

" on the event of said Joseph Shloss failing or neglecting to fulfil the covenants herein contained on his part, then said Caroline Winters shall exercise all rights and privileges and institute all suit or suits against said Joseph Shloss, the same as if these articles of agreement were never executed." It was further shown that after having made certain payments the said Joseph Shloss died testate, and letters testamentary were issued to the defendants.

The plaintiff then rested her case, when the defendants requested the court to charge :

1. As the agreement in evidence shows upon its face that the consideration therefor was the stifling and suppression of a threatened criminal prosecution, and as such threatened criminal prosecution is not within the act of assembly which allows the parties to settle and compound criminal acts in cases where there is also a civil remedy, such agreement is contrary to public policy and void, and the verdict of the jury should be for the defendant.

The court declined to charge the jury as requested, and directed the jury to render a verdict for the plaintiff.

The jury returned a verdict in favor of the plaintiff for $1,695. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendants took this writ, assigning as errors the refusal of the court to charge as requested and the instruction to the jury to render a verdict for the plaintiff.

Mr. James Ryon (with him Mr. J. D. Yocum), for the plaintiffs in error :

1. The agreement discloses on its face that it was given to suppress a criminal prosecution for fornication and bastardy ; for that reason it is claimed that it is illegal and void, and not within § 9 of the criminal procedure act of March 31, 1860, P. L. 432. This section authorizes a settlement of certain minor offences, where the party complaining has a remedy by action for the same offence : Geier v. Shade, 109 Pa. 180 ; Riddle v. Hall, 99 Pa. 116 ; Bredin's App., 92 Pa. 241 ; Avery v. Layton, 119 Pa. 604 ; Stumpf's App., 116 Pa. 33 ; Pearce v. Wilson, 111 Pa. 14 ; Ormerod v. Dearman, 100 Pa. 561. Has

Caroline Winters, the party to this contract in evidence, or had she, any civil remedy to recover damages for the injury set out in the contract? A woman is not seduced against her consent. The maxim, volenti non fit injuria, is applicable to her, and she cannot make her seduction a ground of recovery: Weaver v. Bachert, 2 Pa. 80.

2. Contracts that have a tendency to interfere with the punishment of criminal offences are universally held to be illegal. Where a person has suffered an injury by the commission of a crime, his personal loss is likely to appear of more importance to him than the injury to the state, and the cases are, therefore, very numerous in which the injured party has agreed not to prosecute the offender for a money consideration. All such contracts are void : National Bank of Oxford v. Kirk, 90 Pa. 49 ; Bredin's App., 92 Pa. 241 ; Pearce v. Wilson, 111 Pa. 14. Moreover, there was no mutuality in this contract. The plaintiff was at liberty, if Shloss failed to make any of the payments, to renounce the contract and to bring her prosecution for fornication and bastardy. Shloss paid $1,500, then failed to pay ; consequently the plaintiff was released from the contract and it was at an end. The contract, therefore, after the failure of Shloss to pay, was not binding on the plaintiff, and ceased to be mutual if it ever was mutual: Bodine v. Glading, 21 Pa. 50 ; Wilson v. Clarke, 1 W. & S. 554.

*Mr. Wm. Knight Shryock*, for the defendant in error :

1. The plaintiff contends that the settlement in the present case was in strict accordance with the law and that the note was given for a good and legal consideration. Section 9, act of March 31, 1860, permits the settlement of any misdemeanor committed to the injury and damage of the complainant, and for which there is a remedy by action, if the offence be not charged to have been done with intent to commit a felony and not being an infamous crime. Fornication and bastardy does work actual injury and damage to the mother, but, as she is particeps criminis, it may be said that it is damnum absque injuria. She has a remedy, however, against the father, after conviction and sentence, for the money the court may sentence him to pay to her, and if the sheriff suffer him to escape after sentence she may sue the sheriff and his sureties.

2. Under § 4, act of March 29, 1819, P. L. 227, after indictment found by the grand jury, the attorney general could not lawfully enter a nolle prosequi except in cases of assault and battery, fornication and bastardy, on agreement between the parties, or in prosecutions for keeping tippling houses, without the consent of the court. In Maurer v. Mitchell, 9 W. & S. 69, decided under that act, a contract of compromise made before indictment had been found, by which the reputed father agreed to pay a stipulated sum for the lying-in expenses and for bringing up the child, was held not to be founded on such an illegal consideration as would avoid it. Since the act of 1860, it has been the practice in this district to allow a settlement of a prosecution for fornication and bastardy to be made between the mother and the putative father, and a nolle prosequi to be entered: Stumpf's App., 116 Pa. 33; Geier v. Shade, 109 Pa. 180. The duty to perform a positive promise, which is not contrary to law or public policy, or obtained by fraud, imposition, undue influence or mistake, is certainly an obligation in morals, and if so, it is a sufficient consideration for an express promise: Bentley v. Lamb, 112 Pa. 484; Leonard v. Duffin, 94 Pa. 218; York Co. v. Small, 1 W. & S. 315; Maurer v. Mitchell, 9 W. & S. 69.

PER CURIAM:

An examination of the articles of agreement in this case shows that the money to be paid by Shloss was to be paid " in full satisfaction for the lying-in expenses, maintenance, educating and bringing up " of the plaintiff's child, of which the said Shloss was the putative and self-acknowledged father. As this was a perfectly legitimate and entirely proper purpose to be accomplished by the agreement in suit, the contract ought to be enforced unless there is some fatal legal objection to its validity. The only objection alleged against it is the fact that the agreement discloses on its face that it was given to stifle a criminal prosecution for fornication and bastardy.

It is true that the plaintiff did release to Shloss all civil and criminal actions, demands and proceedings, which she might have against him, and from this it may be inferred that one of the motives which animated Shloss in making the agreement, might have been the expectation of escaping a criminal pros-

ecution.   But it is also true that ever since the year 1819, the public policy of this commonwealth as indicated by its public laws has not only permitted but favored the settlement of just such cases as this, by the voluntary agreement of the parties. We have several times held that contracts between the reputed father and mother of the child, for the settlement of claims founded upon fornication and bastardy, are not illegal and will be enforced.   A noted instance of this kind was the case of Maurer v. Mitchell, 9 W. & S. 69, in which Chief Justice GIBSON said, speaking of the act of 1819: "Thus the offence, like assault and battery with which it was associated in that statute, became little more than a private wrong; and when the legislature authorized the parties to treat it as such between themselves, the contract certainly became legal so far as they were individually concerned."   This act certainly continued in force until 1860, and, as the criminal code enacted in that year also sanctioned the settlement of misdemeanors, an unbroken practice has prevailed in all parts of the state, for a great many years, of settling cases of this kind by the voluntary agreement of the parties.   In view of this long continued practice and of the judicial and legislative sanction which it has received, and in view also of the fact that the chief subject matter of the contract is the support of the child, we cannot say that such contracts are opposed to the public policy of the state.   As there is no other reason for refusing the enforcement of this particular agreement we think it should prevail.

Judgment affirmed.